IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LORA LANE and KIMBERLY
CERVANTES,

            Plaintiffs,

   vs.

STATE OF OREGON DEPARTMENT OF
CORRECTIONS & PAUL WILSON,

            Defendants.

Civ. No. 05-1497-AA
(Consolidated cases)


OPINION AND ORDER

---

R. Adian Martin
Ransom, Gilbertson, Martin & Ratliff, LLP
317 S.W. Alder Street, 9th Floor
Portland, OR 97204
    Attorney for plaintiffs

Hardy Myers
Attorney General
Kenneth C. Crowley
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
    Attorneys for defendant State of Oregon
    Department of Corrections

AIKEN, Judge:

Plaintiffs Lora Lane and Kimberly Cervantes filed these actions against defendants Paul Wilson and the State of Oregon Department of Corrections (ODOC) alleging sexual harassment under 42 U.S.C. § 2000e and battery under Oregon law. Defendant ODOC now seeks summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that plaintiffs cannot produce prima facie evidence of a hostile work environment. Alternatively, ODOC argues that it cannot be held liable for any alleged harassment by defendant Wilson because it has established an affirmative defense.

ODOC filed its motion for summary judgment on September 28, 2006. Plaintiffs were required to file a response or seek an extension to file a response within eleven days. L.R. 7.1(g)(1). Plaintiffs failed to do so. When contacted by court staff, plaintiffs' counsel indicated that he had not gotten around to filing the response but would seek an extension of time in which to file it. On October 24, 2006, plaintiffs filed a motion for extension of time but failed to confer with opposing counsel as required by L.R. 7.1(a). The court instructed plaintiffs' counsel to confer and did not rule on the motion. Thereafter, on November 1, 2006, plaintiffs' counsel filed their response. Given the untimeliness of plaintiffs' response, and counsel's failure to confer as directed, the court denies the motion for extension of time and does not consider plaintiffs' response.

Ordinarily, ODOC's motion could be granted on that ground alone. However, in fairness to plaintiffs I have thoroughly reviewed the materials submitted by ODOC and construed all inferences in plaintiffs' favor to determine whether genuine issues of material fact remain. ODOC's motion for summary judgment is denied.

## I. BACKGROUND

South Fork Forest Camp is a minimum security correctional facility operated by the Oregon Department of Corrections in conjunction with the Oregon Department of Forestry.

Plaintiff Lora Lane was hired as a temporary correctional officer by ODOC to work at South Fork in March 2003. Lane became a permanent employee in July 2003 and completed her one-year period of trial service on July 1, 2004. She had previously worked as a corrections officer in Arizona for six years, beginning in 1996. Both in Arizona and at ODOC, she was trained and understood her duty to report sexual harassment.

Plaintiff Kimberly Cervantes was hired by ODOC as a temporary correctional officer at South Fork in November of 2002, and she became a permanent employee in May of 2003. Like Lane, she was trained in and understood ODOC sexual harassment policies and reporting procedures. In 2003, Cervantes utilized the ODOC sexual harassment procedures by reporting inappropriate emails from another corrections officer.

Defendant Paul Wilson was hired as a correctional officer by ODOC on May 13, 1990 and became a sergeant at South Fork in September of 2002. Wilson retired on August 1, 2006.

Lane alleges that beginning in October 2003 Wilson subjected her to inappropriate and harassing behavior, including comments of a sexual nature, statements regarding her appearance, and unwelcome physical contact including hugging, kissing, and touching.

Similarly, Cervantes alleges that beginning in approximately November 2002, Wilson subjected her to inappropriate and harassing behavior, including comments regarding her appearance, statements of a sexual nature, and unwelcome physical contact including hugging, kissing, and touching.

On October 26, 2004, Cervantes reported Wilson's harassment of both herself and Lane to Lieutenant (Lt.) Ruark in casual conversation. Lt. Ruark then approached Lane to confirm the allegations and asked her to submit a written report about the alleged incidents. On November 4, 2004, Lt. Ruark provided written statements from his meetings with Lane and Cervantes, as well as a written statement from Lane dated November 3, 2004, to camp commander Jeff Boyer. On November 5, 2004, Cervantes filed a written complaint regarding Wilson's behavior.

On November 8, 2004, Wilson was interviewed by Human Resources and denied all allegations. Effective the same day, he was placed on paid administrative leave pending an investigation into the

sexual harassment complaints.  He was reinstated after the Human Resources investigation failed to substantiate plaintiffs' claims. Upon Wilson's return to work, a supervisor reviewed ODOC's sexual harassment policy with him.

On December 6, 2004, Lane and Cervantes met with Human Resources to express their concern over Wilson's return to duty and suggested another witness that might support their allegations. Wilson denied the behavior described by the corroborating witness. Later that month, Lane resigned her position at ODOC and moved to California.  Cervantes apparently remains employed by ODOC.

On September 27, 2005, plaintiffs filed suit in this court.

## II. STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987).  Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of

a genuine issue of material fact.  Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).  If the moving party shows the absence of a
genuine issue of material fact, the nonmoving party must go beyond
the pleadings and identify facts which show a genuine issue for
trial.  Id. at 324.

     Special rules of construction apply when evaluating summary
judgment motions: (1) all reasonable doubts as to the existence of
genuine issues of material fact should be resolved against the
moving party; and (2) all inferences to be drawn from the
underlying facts must be viewed in the light most favorable to the
nonmoving party.  T.W. Electrical, 809 F.2d at 630.

III.  DISCUSSION

A.  Prima Facie Case

     Plaintiffs allege that they were subjected to harassment and
a hostile work environment based on their gender.  The Supreme
Court has recognized "hostile environment" sexual harassment as a
type of prohibited sex discrimination under Title VII of the Civil
Rights Act.  See Meritor Savings Bank v. Vinson, 477 U.S. 57, 67
(1986) ("For sexual harassment to be actionable, it must be
sufficiently severe or pervasive to alter the conditions of [the
victim's] employment and create an abusive working environment.")
(internal quotation marks and citation omitted).  A hostile
workplace environment is one that is "both objectively and
subjectively offensive, one that a reasonable person would find

6-OPINION AND ORDER

hostile or abusive, and one that victim in fact did perceive to be so." Nichols v. Azteca, 256 F.3d 864, 871-72 (9th Cir. 2001) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)).

To establish a prima facie hostile environment claim the plaintiff must show that: (1) the claimant was subjected to "sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature," (2) the conduct described above was unwelcome, and (3) the conduct was "sufficiently severe or pervasive to alter the condition's of the victim's employment and create an abusive working environment." Ellison v. Brady, 9254 F.2d 872, 875-76 (9th Cir. 1991) (citing Jordan v. Clark, 847 F.3d 1368, 1373 (9th Cir. 1988).

ODOC does not challenge the objective offensiveness of Wilson's behavior.   Rather, ODOC argues that plaintiffs lack prima facie evidence of a hostile work environment because they have not shown that Wilson's alleged actions were unwelcome or that they perceived Wilson's actions to be hostile or abusive.

Specifically, ODOC points to Lane's failure to report the alleged conduct immediately, her continued interactions with Wilson, and her indirect indications of disinterest to demonstrate that Wilson's actions were not unwelcome.   Similarly, ODOC emphasizing Cervantes' failure to immediately report the alleged harassment and her continued interaction with Wilson - including discussing her marital problems and going on a fishing trip with

Wilson and other staff.  ODOC also maintains that Cervantes read
sexually explicit portions of inmate mail aloud with other staff in
an attempt to illustrate her comfort with sexual matter in the
workplace.   However, ODOC's exhibits and affidavits do not
demonstrate that there is no dispute of material fact as to whether
Wilson's conduct was unwelcome.   The requisite degree of proof
necessary in Title VII cases to establish a prima facie case on
summary judgment is minimal and need not rise to the level of a
preponderance of the evidence.  Wallis v. J.R. Simplot Co., 26 F.3d
885, 889 (9th Cir. 1994).

Here, the record contains evidence that plaintiffs did find
Wilson's alleged actions offensive.  For example, Lane alleges that
Wilson would kiss her on the cheek, make excuses to touch her
buttocks, make comments about her body, request sexual favors, and
ask when they would get together.  Def. Ex. 5, pp. 24-25.  Lane
also reported that Wilson talked about how he wanted to make her
"feel good" and made gestures with his tongue when talking about
sex.  Def. Ex. 8, p. 26.  Further, Lane alleged that Wilson stated
Lane could go places in the department if she "stuck by him."  Def.
Ex. 8, p. 26.  Lane stated that she began considering his conduct
to be sexual harassment when he began asking for "sexual favors"
beginning in October 2003 and after that found conduct of Wilson's
objectionable.  Id. p. 29.

Lane testified in her deposition that she did not welcome the

advances, stating, "I figured if I made up enough excuses that he would get the hint and not continue." Def. Ex. 5, p. 17. Lane eventually told Wilson that she liked his wife too much to engage in sexual relations with him. Lane testified in her deposition that Wilson warned her that if she told anyone about his comments he would deny it and no one would believe her. Lane was on trial status at the time and thought she could be fired without cause. Def. Ex. 5, pp. 12-13, 15, 18.

Likewise, Cervantes testified that Wilson made comments she thought were offensive, including stating that he "had a hard-on" when she wore a smaller uniform, that "he felt tingly all through the body," and that even though "I'm older, my penis still works great." Def. Ex. 6, p. 19, Ex. 8, p. 27. Cervantes also reported to Lt. Ruark that Wilson offered her cars and housing in exchange for sexual favors and that Wilson was harassing another woman, whom Ruark guessed was Lane. Def. Ex. 3, pp. 10-11. Further, Cervantes testified that Wilson had told her that he was her only ally, and that other employees were talking about her wanted her fired. Def. Ex. 6, p. 17. According to Cervantes, Wilson stated that if she stuck by him" she would be successful at work, because he had a lot of power with those in authority. Id. p. 5. Finally, like Lane, Cervantes testified that she told other staff that she did not want to work on Wilson's shift. Id. p. 22.

Construing all interferences in favor of plaintiffs, I do not

find plaintiffs' continued interactions with Wilson, such as they were, to be conclusive evidence that they did not find his behavior offensive, particularly when Wilson was a sergeant and directly supervised them while on shift.    In <u>Nichol</u>, the Ninth Circuit advised that "as any reasonable person would" a plaintiff can make a distinction between conduct "perceived to be objectionable, and conduct that was not." 256 F.3d at 873.    Additionally, the record contains evidence that Lane and Cervantes told others that Wilson had asked them for sexual favors, and that they were uncomfortable around Wilson and sought to avoid shifts with him.

Based upon the record before me, and noting that all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party, I find that disputed issues of fact exist as to whether plaintiffs found Wilson's conduct unwelcome or offensive.

B. <u>Employer Liability</u>

Even if there is prima facie evidence of hostile work environment, ODOC argues that summary judgment is appropriate because ODOC fulfilled its duties to plaintiffs once it became aware of the alleged harassment.

A plaintiff may state a case for harassment against an employer under a theory of either vicarious liability or negligence. <u>Swinton v. Potomac Corp.</u> 270 F.3d 794, 803 (9th Cir. 2001). The identity of the actual harasser determines the burden.

Id.  If the perpetrator is a supervisor, the employer can be held
vicariously liable; if merely a co-worker, the plaintiff must prove
the employer was negligent.  Nichols, 256 F.3d at 875; see also
Ellison, 924 F.2d at 876, 881.  Vicarious liability sets a "more
stringent standard" for the employer than the "minimum standard"
under a negligence theory.  Burlington Industries, Inc. v. Ellerth,
524 U.S. 742, 759 (1998).

    1.  Supervisor or Co-Worker

    ODOC argues that Wilson is not a supervisor, and therefore a
negligence standard applies.  ODOC maintains that plaintiffs cannot
establish negligence on the part of ODOC, because it took
corrective actions immediately after learning of Wilson's behavior.

    The Ninth Circuit provides two categories of employees
considered supervisory for attachment of vicarious liability:
"those who have authority to hire, fire, or discipline employees,
or recommend such action," and those who have "general
responsibility for passing employment-related complaints up the
corporate hierarchy." Brooks v. San Mateo, 229 F.3d 917, 925 n.6
(9th Cir. 2000) (internal citations omitted); see also Swinton, 270
F.3d at 804-05.  Additionally, the Supreme Court contemplated
vicarious liability for those with only apparent supervisory
authority, writing that "[i]f, in the unusual case, it is alleged
there is a false impression that the actor was a supervisor, when
he in fact was not, the victim's mistaken conclusion must be a

reasonable one." Ellerth, 524 U.S. at 759.

ODOC argues that Wilson is not a supervisor, because sergeants are not classified as supervisors in the ODOC chain of command. Rather, the superintendent and camp commander make ultimate hiring, firing, and disciplinary decisions, relying primarily on reports from lieutenants. Defendant's Memorandum in Support of Motion for Summary Judgment, p. 6. Defendants emphasize that sergeants lack authority over disciplinary matters because they must "go to a lieutenant if [a] new hire was not behaving appropriately or was failing to follow direction." Id. Additionally, sergeants are not considered part of management for purposes of union representation.

However, the ODOC position description for Correctional Sergeants such as Wilson lists as essential duties "program supervision . . . and directly supervises correctional staff who supervise and monitor the activities of inmates." Def. Ex. 8, p. 8. The description also includes the duties of assigning and reassigning staff as necessary according to skills and abilities and taking "immediate action to correct staff." Id. p. 9. Finally, it states that sergeants "should have experience supervising a unit . . . with a minimum of supervisory review, and be able to make decisions in the absence of immediate guidance and support." Id. p. 10.

Likewise, Lt. Ruark testified in his deposition that sergeants are typically referred to as "shift supervisors" because they run

the shift to which they are assigned. Def. Ex. 1, p. 3. Thus, as a sergeant, Wilson had immediate supervisory authority over plaintiffs and raises a question of fact as to whether Wilson was a supervisor.

Moreover, evidence in the record suggests that plaintiffs both believed Wilson had supervisory authority over them. Lane testified that she did not report Wilson or reject his advances more forcefully, saying "[H]e is my supervisor. He has input on my review." Def. Ex. 5, p. 17. Additionally, Lane stated that her supervisor during training was "Paul, Sergeant Paul Wilson." Id. p. 26. Likewise, Cervantes testified in her deposition that sergeants were "first line supervisors," and that her supervisor "most of the time" was Wilson. Id. pp. 26, 27. Cervantes also stated that if she had a complaint about a fellow corrections officer, she would report it to a sergeant according to the chain of command. Id. pp. 26-27. Finally, the Human Resources investigation report from the incident indicates that Wilson "refers to himself as a supervisor and this role is accepted throughout the Camp. In fact, as a Sergeant he is a lead worker." Def. Ex. 8, p. 31.

Based on the evidence above and construing all inferences in favor of the plaintiffs, I find that questions of material fact remain Wilson had supervisory authority over plaintiffs, and this court cannot determine the appropriate standard governing ODOC's

13-OPINION AND ORDER

liability. Even if Wilson was not a supervisor, I find that questions of fact also exist as to whether plaintiffs' belief in his supervisory authority was reasonable.

### 2. Ellerth/Faragher Defense

Even if Wilson is considered plaintiffs' supervisor and is subject to vicarious liability, ODOC argues that it has established an affirmative defense under Ellerth and Faragher. If the alleged harasser is a supervisor, an employer may establish an affirmative defense to vicarious liability when no tangible employment action has been taken against the plaintiff. Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807. To establish the Ellerth/Faragher defense an employer must show: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id.

With respect to the second element, ODOC argues that both plaintiffs unreasonably failed to take advantage of the preventive or corrective opportunities provided, because they were trained on reporting procedures and understood their duties under the sexual harassment policy but failed to report Wilson's alleged harassment for an extended period of time.

Specifically, ODOC asserts that Lane's actions were

unreasonable because she never initiated a report of the alleged harassment, and only responded to a request from Lt. Ruark for information after Cervantes reported the incidents. ODOC also claims that Lane unreasonably failed to follow procedure when she did not directly refuse Wilson's alleged advances, instead making up excuses so that "he would get the hint and not continue." Def. Ex. 5, p. 17. For example, when Wilson asked Lane if she "was ever going to meet him," Lane told Wilson directly that she would not because of his wife, after which they rarely spoke. Id. pp. 11, 30. ODOC argues that the effectiveness of ODOC's corrective procedures and later investigation of Wilson support the unreasonableness of Lane's previous failure to utilize them.

Likewise, ODOC argues that Cervantes' failure to report Wilson's behavior until October of 2004 was unreasonable because she had reported harassment by another employee in 2003 during the time Wilson's harassment was supposedly occurring. That complaint resulted in a Human Resource investigation and demotion of that officer. ODOC emphasizes that Cervantes asked Lt. Ruark not to report her allegations when she eventually did discuss Wilson's alleged conduct, which would violate his reporting duties as a supervisor.

In her deposition, Lane testified that she did not report the alleged harassment initially because she feared termination due to her trial status. Def. Ex. 5, pp. 12, 13, 14, 17. She testified

15-OPINION AND ORDER

that Wilson threatened to deny any allegations, saying "Who do you think they'll believe?  Me or you?"  Id. at 13.  Lane claims that in June 2004, she indicated her discomfort with Wilson to Lt. Lange when shift change assignments were distributed, but he did not follow up on her complaint.  Id.  Lane further explained that she did not more forcefully reject Wilson's advances because he was her supervisor, and therefore had input on her review.  Id. at 17. Once she rebuffed his advances, Lane thought she had handled the situation the best she could; Lane testified that those in the chain of command were "tight," and she did not want the humiliation and embarrassment associated with filing a complaint of sexual harassment.  Id. p. 15.

Cervantes testified that she did not report one of the alleged sexual comments, "[b]ecause Paul Wilson made it a very strong point to tell me that the only way I was going to get through that job was to stick close to him.  He had a lot of power. . . . So the only way I would make it there was to keep him happy and to make him like me."  Def. Ex. 6, pp. 4-5.  She also claims that Wilson repeatedly told her that other staff members were talking about her and wanted her to be fired during her temporary and trial periods. Id. p. 17.  According to Cervantes, Wilson indicated "he was [her] only ally.  If [she] didn't stick close to him, then [she] was done."  Id. pp. 18-19.  Cervantes expressed also concern for her job when she relayed Wilson's behavior to Lt. Ruark, asking him not

to repeat her complaints because she was afraid of losing her job.

Based on the record and construing any factual inferences in favor of the plaintiffs, I find that a disputed issue of fact exists as to whether plaintiffs failure to take advantage of ODOC's protective and corrective measures in a more timely fashion was unreasonable. Wilson repeatedly told Lane and Cervantes that they would not be believed, that they could be fired, and that they needed him to be successful in their positions. Further, Wilson was plaintiffs' direct supervisor and the crew leader, and other employees looked up to him and considered him a father figure.

Because I find that issues of fact remain as to the reasonableness of plaintiffs' failure to report the alleged harassment, it is unnecessary to address the other elements of the Ellerth/Faragher defense.

<u>IV.  CONCLUSION</u>

ODOC's Motion for Summary Judgment (doc. 51) and Plaintiffs' Motion for Extension of Time (doc. 54) are DENIED.  IT IS SO ORDERED.

Dated this __18__ day of December, 2006.


_____
Ann Aiken
United States District Court Judge


17-OPINION AND ORDER